

# AFTAB PUREVAL
# HAMILTON COUNTY CLERK OF COURTS

## COMMON PLEAS DIVISION

```
ELECTRONICALLY FILED
March 15, 2017 12:15 PM
    AFTAB PUREVAL
   Clerk of Courts
 Hamilton County, Ohio
 CONFIRMATION 608581
```

**THE CINCINNATI INSURANCE COMPANY AN OHIO CORPORATI**
vs.
**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURG**

A 1701483

**FILING TYPE: INITIAL FILING (OUT OF COUNTY) WITH JURY DEMAND**

**PAGES FILED: 45**

EFR200

COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| THE CINCINNATI INSURANCE COMPANY, an Ohio corporation<br>6200 South Gilmore Road<br>Fairfield, OH 45014-5141 | : <br> : <br> : <br> : <br> : | CASE NO. _____ <br><br> (Judge _____) <br><br> **COMPLAINT FOR DECLARATORY** |
|     Plaintiff, | : <br> : <br> : | **JUDGMENT AND MONETARY** <br> **RELIEF AND JURY DEMAND** |
| vs. | : <br> : | **CERTIFIED MAIL SERVICE** |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, Pa.<br>175 Water Street<br>New York, NY 10038 | : <br> : <br> : <br> : <br> : | **REQUESTED** |
|     Defendant. | : | |

    Comes now Plaintiff, The Cincinnati Insurance Company, by and through counsel, and for its Complaint against Defendant National Union Fire Insurance Company of Pittsburgh, Pa., states and alleges as follows:

**THE PARTIES**

    1.    Plaintiff The Cincinnati Insurance Company ("Cincinnati") is a corporation organized under the laws of the State of Ohio and is authorized by the state of Ohio to issue insurance policies.

    2.    Defendant National Union Fire Insurance Company of Pittsburgh, Pa ("National Union") is an insurance company organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business in New York. National Union is authorized to and is conducting business in the State of Ohio.

    3.    This is an action for declaratory judgment brought pursuant to Ohio Rule of Civil Procedure 57 and Ohio Revised Code §2721.01 *et seq.* to determine the duties and obligations of

the parties with regard to insurance contracts Cincinnati and National Union issued, under which Wallick Properties Midwest, LLC ("Wallick") was an insured for the underlying claim.

4. Cincinnati's policy was issued to Wallick, an Ohio corporation, in the State of Ohio through an Ohio insurance agency.

## UNDERLYING CLAIM

5. On or about May 26, 2015, firefighters were dispatched to an apartment building located at 6020 Dahlgren Street, Cincinnati, Hamilton County, Ohio 45227 in response to a reported fire.

6. During the relevant time period, the building was owned by The Community Builders, Inc. ("TCB") and/or one of its subsidiaries.

7. TCB hired Wallick as property manager for the building.

8. The Management Agreement entered between TCB and Wallick on November 15, 2012, provides in pertinent part as follows with regard to insurance:

> Insurance. The Owner [TCB] will inform the Agent [Wallick] of insurance to be carried with respect to the Project and its operations and the Owner will cause such insurance to be placed and kept in effect at all times. The Agent will pay premiums out of the Rental Agency Account and premiums will be treated as operating expenses. All insurance will be placed with such companies, or such conditions, in such amounts and with such beneficial interests appearing thereon as shall be acceptable to the Owner and Consenting Parties and shall be otherwise in conformity with the mortgage; **provided that the same will include public liability coverage, with the Agent designated as one of the insured, in amounts acceptable to the Agent as well as the Owner and the Consenting Parties. The Agent will investigate and furnish the Owner with full reports as to all accidents, claims and potential claims for damages relating to the Project and will cooperate with the Owner's insurers in connection therewith.**

Emphasis added. A true and accurate copy is attached as Exhibit A.

9. A claim was brought on behalf of a firefighter who was killed responding to the fire at 6020 Dahlgren Street, Cincinnati, Ohio 45227, alleging TCB, Wallick and other entities were liable for the firefighter's death.

10. The claim alleged TCB was liable as owner, manager and operator of the building, and Wallick was alleged to be liable as having provided property management services for the building.

11. At all relevant times, Wallick was acting as a real estate manager for TCB for the property at 6020 Dahlgren Street.

12. Prior to suit being filed, the claim brought on behalf of the firefighter was settled with regard to the claims against Wallick.

13. Settlement negotiations occurred in Hamilton County, Ohio, and settlement checks were ultimately delivered in Hamilton County, Ohio.

14. There is a dispute between Cincinnati and National Union as to how the coverage provided to Wallick by its insurance policies should be allocated, and priority of coverage. As part of the settlement negotiations in Hamilton County, Ohio, Cincinnati and National Union expressly reserved this allocation/priority of coverage issue for resolution by the Court after settlement of the underlying claim.

## **INSURANCE POLICIES**

15. Liberty Mutual Insurance/American Economy Insurance Company issued a Commercial Package Policy to Named Insured The Community Builders, Inc. ("TCB"), policy no. 02-CE-232046-1, effective from May 1, 2014 to May 1, 2015. This policy is not attached due to its size, but is available upon request.

16. Liberty Mutual's policy defined "insured" as including any person or organization "while acting as your real estate manager."

17. Liberty Mutual agreed Wallick was an insured under the policy issued to TCB; agreed its policy was primary; provided Wallick defense and indemnity; and contributed to the settlement of the firefighter's claim on behalf of Wallick, providing primary coverage until its policy was exhausted.

18. Liberty Mutual's policy was exhausted by payment of settlement.

19. National Union issued an Umbrella Prime Commercial Umbrella Liability Policy with Crisis Response to Named Insured TCB, policy no. BE 035 38 49 80, effective from May 1, 2014 to May 1, 2015, with limits of insurance of $25,000,000 each occurrence. This policy is not attached due to its size, but is available upon request.

20. National Union's policy includes a Commercial General Liability Limitation Endorsement 87043 (11/04), which excludes commercial general liability coverage unless provided for by a policy listed in Schedule of Underlying Insurance, and provides "coverage under this policy will follow the terms, definitions, conditions and exclusions of Scheduled Underlying Insurance, subject to the Policy Period, Limits of Insurance, premiums and all other terms, definitions, conditions and exclusions of this policy...."

21. The Schedule of Underlying Insurance for National Union's Umbrella policy includes the general liability policy referenced above issued by Liberty Mutual/American Economy Insurance Company effective from May 1, 2014 to May 1, 2015, under which Wallick is an insured, and which provided primary coverage for Wallick until it was exhausted by settlement.

22. National Union's policy also defines "insured" as "any person (other than your employee or volunteer worker) or organization while acting as your real estate manager."

23. Wallick is an insured under the terms of National Union's policy.

24. National Union's policy is a follow form policy with regard to commercial general liability coverage provided by underlying insurance, here Liberty Mutual's policy.

25. National Union's policy provides that "if other valid and collectible insurance applies to damages that are also covered by this policy, this policy will apply excess of the other insurance." "Other insurance" is defined in National Union's policy as a valid and collectible policy of insurance providing coverage for damages covered in whole or in part by this policy.

26. Cincinnati issued a Common Policy of insurance, policy no. CAP 512 15 44, effective from June 24, 2014 to June 24, 2015, to Wallick Properties Midwest LLC, providing Commercial General Liability Coverage in the amount of $1,000,000 each occurrence. This policy is not attached due to its size, but is available upon request.

27. Cincinnati's policy covered certain properties owned and/or managed by Wallick on a primary basis, which properties were specifically included on a Schedule of Locations. The premiums for the primary coverage for such properties was calculated based on the number of apartment units in a building. This Dahlgren Street apartment building which Wallick managed for TCB was <u>not</u> included on the Schedule of Locations for which primary coverage was provided, and primary coverage was not provided for that property.

28. Cincinnati's policy covered other properties, which Wallick managed but which were owned by someone else who provided primary general liability insurance for Wallick for the property, and for which Cincinnati's general liability coverage then was contingent and/or excess. The premiums for the contingent/excess coverage for such properties were calculated by

5

the total management fees for all contingent/excess locations. This Dahlgren Street apartment building which Wallick managed for TCB was one of the locations for which such contingent/excess coverage was provided to Wallick by Cincinnati.

29. Cincinnati's policy has a Real Estate Property Managed Endorsement, CG 22 70, which provides that "With respect to your liability arising out of your management of property for which you are acting as real estate manager this insurance is excess over any other valid and collectible insurance available to you."

30. The Real Estate Property Managed Endorsement appended to Cincinnati's policy is intended to confirm that with respect to liability arising out of Wallick's management of property for which Wallick is acting as a real estate manager, the policy's CGL coverage is excess over any other valid and collectible insurance available, whether such insurance is primary or excess.

31. The Real Estate Property Managed Endorsement in Cincinnati's policy, which makes the general liability coverage excess coverage, acts in conjunction with the language in a building owner's policies and in the standard general liability coverage forms which makes a property manager, by definition, an insured under the building owner's policy. This excess provision of Wallick's Cincinnati policy reduces the cost of liability coverage for the property manager and allows the owner and property manager to consolidate coverage in the event of a claim.

32. The Management Agreement entered between Wallick and TCB confirms the intent to have Wallick, as property manager, be an insured on TCB's policies, allowing Wallick to make its own policy issued by Cincinnati contingent/excess, thus consolidating Wallick's coverage with TCB's coverage in the event of a claim.

33. Wallick's intent and understanding in entering the Management Agreement with TCB and the insurance policy with Cincinnati was that TCB's policies of insurance would apply to and provide coverage for claims like that of the firefighter here before Wallick's policy issued by Cincinnati would ever be triggered.

## PRIORITY OF COVERAGE DISPUTE – DECLARATORY AND MONETARY RELIEF

34. As part of the settlement, National Union insisted Cincinnati pay the limits of its policy before National Union would make any contribution to the settlement.

35. As part of the settlement, Cincinnati and National Union expressly preserved the issue of allocation and priority of insurance coverage under their insurance policies for Court determination.

36. Cincinnati seeks a judgment and determination that since Cincinnati's coverage is excess for real estate property management, and the policy issued by National Union provides that it is also excess, the excess clauses in both policies are mutually repugnant, so that National Union and Cincinnati should be responsible for a pro rata share of the settlement paid herein.

37. Cincinnati seeks a declaration and determination from the Court that Cincinnati's insurance policy applies pro rata with National Union's insurance policy such that Cincinnati is responsible for 1/26 of the amount paid in settlement on behalf of Wallick by its excess insurers, and National Union is responsible for 25/26 of that amount. Further, Cincinnati seeks reimbursement from National Union herein of the amounts Cincinnati paid in excess of Cincinnati's contractual obligation.

## PRAYER FOR RELIEF

WHEREFORE, The Cincinnati Insurance Company asks that the Court adjudicate and determine the rights and obligations of the parties under the Cincinnati and National Union

policies as set forth herein; find that Cincinnati and National Union's policies apply pro-rata; and order National Union to reimburse Cincinnati the amounts paid in settlement which were not owed under its policy.

Respectfully submitted,

KOHNEN & PATTON, LLP

/s/ Colleen M. Blandford
Colleen M. Blandford (0061877)
Kimberly A. Kyle (0072574)
PNC Center, Suite 800
201 E. Fifth Street
Cincinnati, OH 45202
(513) 381-0656
(513) 381-5823 fax
cblandford@kplaw.com
kkyle@kplaw.com
Attorneys for Plaintiff

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues asserted herein.

/s/ Colleen M. Blandford
Colleen M. Blandford

## REQUEST FOR CERTIFIED MAIL SERVICE

TO THE CLERK:

Please serve Defendant a Summons and a copy of the Complaint for Declaratory Judgment at the address shown on the face of this Complaint, by certified mail, return receipt requested.

/s/ Colleen M. Blandford
Colleen M. Blandford

4828-9545-8105.2

8